# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3672 | **DATE** | March 1, 2004 |
| **CASE TITLE** | SB Designs, et al  v  Reebok International, Ltd., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant And's motion to sever is granted and counts III and IV are transferred *sua sponte* to the Eastern District of Pennsylvania under 28 U.S.C. §1404(a). Defendant Reebok's motion to dismiss is denied as moot..
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | MAR 0 2 2004 | |
| | Notified counsel by telephone. | | date docketed | 34 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | CLERK | date mailed notice | |
| GDS | courtroom deputy's initials | '04 FEB 29 PM 11:40 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SB DESIGNS, CARY SIDNEY and MAURICE )
SIDNEY, )
 )
Plaintiffs, )
 )
 ) No. 03 C 3672
v. )
 ) Judge Robert W. Gettleman
REEBOK INTERNATIONAL, LTD., AND 1 )
INTERNATIONAL, CROSSOVER )
PROMOTION, CROSSOVA PRODUCTIONS, )
CROSSOVER SPORTSGEAR, INC., and )
CROSSOVER CITY HOOPS, )
 )
Defendants. )

## MEMORANDUM OPINION AND ORDER

In their first amended complaint, SB Designs and its co-owners, Gary Sidney and Maurice Sidney, assert violations of the Lanham Act under 15 U.S.C. §§ 1114 and 1125, as well as the "Illinois Unfair and Deceptive Trade Practices Act,"[1] against defendants Reebok International, Ltd. ("Reebok"), And 1 International ("And 1"), Crossover Promotions, Crossova Productions, Crossover Sportsgear, Inc, and Crossover City Hoops,[2] arising from defendants' alleged infringement of plaintiffs' trademark. Defendants Reebok and And 1 moved separately to dismiss the instant complaint. Specifically, Reebok moved to dismiss or, in the alternative, to sever and stay Counts I and II of the first amended complaint, in light of Reebok's earlier filed

---

[1]Although Counts II, IV, VI, VIII, X, and XII are styled as claims brought under the "Illinois Unfair and Deceptive Trade Practices Act," there is no statute by that name. The court presumes that plaintiffs intended to assert claims under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq., to which they referred in their particularized allegations in each of those counts. Plaintiffs are directed to amend their first amended complaint to rectify this error.

[2]As of the date of the instant ruling, only defendants Reebok and And 1 have been served.

declaratory judgment action then pending in Massachusetts Superior Court, and And 1 moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, to sever And 1 from the first amended complaint.

For reasons discussed in open court on February 26, 2004, the court denies Reebok's motion to dismiss or transfer as moot, in light of the dismissal of the Massachusetts state court action for lack of personal jurisdiction. For the reasons stated below, And 1's motion to sever is granted, and the court sua sponte transfers plaintiffs' claims against And 1 to the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a).

## FACTS

According to the first amended complaint, on December 19, 1994, Gary and Maurice Sidney applied for trademark registration for its CROSSOVER KING trademark, which consists of the image of a basketball player in the action of a crossover dribble with a moving ball image and the trade name "CROSSOVER KING," underscoring the logo. On February 24, 1998, the CROSSOVER KING trademark was registered. On October 23, 2001, plaintiffs registered the CROSSOVER KING work mark, as well.

SB Designs allegedly markets basketball apparel affixed with the CROSSOVER KING trademark through the internet, magazine advertising, street marketing, trade shows and sponsorship of sports-related events. According to plaintiffs, beginning in June 1997, Christian Sidney, on behalf of SB Designs, pitched the CROSSOVER KING concept to Reebok. In response to his first letters to Henry Que Gaskins, Reebok Brand Manager of Allen Iverson Apparel, and Paul Fireman, then-chief executive officer and president of Reebok, Sidney received a letter from Reebok's Idea Submissions Coordinator, Kim Lessow, indicating that

2

Reebok could not consider SB Design's idea unless SB Designs signed Reebok's Idea Submissions Guidelines Form.

Although SB Designs did not sign the guidelines form, Maurice Sidney and/or Gary Sidney met with Reebok sale representative Alonzo Alexander on three occasions, and Diego Ross, Reebok's Urban Marketing Manager, on one occasion. Further correspondence ensued, and on March 3, 1998, Christian Sidney, on behalf of SB Designs, allegedly sent CROSSOVER KING promotional art pieces to Gaskins, Fireman, and Peter Roby, Reebok's Brand Director of Basketball. Roby declined interest and returned the art pieces, and Heather Snow, Reebok Legal Manager of Intellectual Property, indicated that Reebok would not consider SB Designs' CROSSOVER KING concept.

Gaskins, however, allegedly called Sidney on March 17, 1998, indicating that he wanted to explore discussions about using the CROSSOVER KING concept in Reebok's (Allen) Iverson I3 Apparel line, and that there was also great potential for a CROSSOVER QUEEN concept. On September 22, 1998, Gaskins informed Sidney that they could not move forward until Reebok's new chief executive officer gave direction. On December 17, 1998, Sidney contacted Reebok's new chief executive officer directly to pitch the CROSSOVER KING and CROSSOVER QUEEN concepts. Reebok's Idea Submissions Coordinator responded that the Idea Submissions Guideline Form had to be signed before Reebok would consider SB Design's idea. Again, SB Designs did not sign the document.

In early 1999, Gaskins indicated that Reebok was planning on moving forward with the Iverson I3 Apparel line concept (presumably without SB Designs), after which SB Designs broke

3

off its contact with Reebok. Gaskins never returned the CROSSOVER KING and CROSSOVER QUEEN promotional art pieces that were sent by Christian Sidney.

In March 1999, SB Designs allegedly discovered various internet sites that promoted Iverson, Reebok and the I3 Apparel line using the CROSSOVER KING trademark. In September 2000, SB Designs discovered Iverson's Crossover Promotions website, which is allegedly sponsored by Reebok. Plaintiffs allege that Crossover Promotions is actively attempting to position and promote Iverson as the so-called "Crossover King," and that numerous websites have promoted Iverson and sold Reebok merchandise in conjunction with the use of the phrase "Crossover King." Moreover, according to the first amended complaint, the Crossover Promotions name and image is confusingly similar to the CROSSOVER KING trademark.

In December 2000, SB Designs discovered an And 1 Egroups website that allegedly used SB Design's "Crossover King" trademark name to draw people to its site. Plaintiffs allege that And 1 has used the CROSSOVER KING trademark to promote And 1 mixtapes and mixtape tours, as well, and that And 1 has produced at least one line of basketball shoes and a t-shirt that infringe SB Designs' CROSSOVER KING trademark.

According to the first amended complaint, Crossova Productions has also directly infringed SB Design's CROSSOVER KING trademark via the sale of "crossover" basketball apparel and the operation of its website, Crossova.com. According to plaintiffs, And 1 promoted this apparel by having its And 1-endorsed basketball players posing in Crossova apparel at a huge And 1 promotional event. Plaintiffs further allege that Crossova Productions is working in conjunction with And 1 to infringe the CROSSOVER KING trademark, by promoting And 1 products, promotional events and basketball players on crossova.com.

In 2000-2001, plaintiffs allegedly discovered that Crossover Sportsgear, Inc. was infringing its CROSSOVER KING and CROSSOVER QUEEN trademarks through the sale and production of "Crossover Hoopgear" and "Crossover Lady Hoopgear" basketball apparel. According to the first amended complaint, plaintiffs learned in July 2003 that Crossover City Hoops was also infringing its CROSSOVER KING trademark through the sale and production of "Crossover City Hoops" basketball apparel and via operation of their website.

Based on these allegations, plaintiffs seek damages and injunctive relief under the Lanham Act, 15 U.S.C. § 1125, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq., against defendants Reebok (Counts I[3] and II), And 1 (Counts III and IV), Crossover Promotions (Counts V and VI), Crossova Productions (Counts VII and VIII), Crossover Sportsgear, Inc. (Counts IX and X), and Crossover City Hoops (Counts XI and XII).

Before proceeding to the merits of And 1's motion to dismiss or sever, the court pauses to address the unique procedural posture of the instant dispute. Prior to bringing this lawsuit on May 29, 2003, SB Designs filed <u>SB Designs v. Nike, Inc.</u>, Case No. 01 C 3936 (N.D.Ill.) (J. Zagel). On April 2, 2003, SB Designs sought leave to amend its complaint to add Reebok and And 1 as defendants in that case.

On June 3, 2003, And 1 filed its own declaratory judgment action in the Eastern District of Pennsylvania. <u>The Basketball Marketing Company, Inc., d/b/a AND 1 v. SB Designs, Inc.</u>, 03 C 3452 (E.D.Pa.). In that case, And 1 seeks a declaratory judgment of non-infringement, as well as cancellation of SB Designs' CROSSOVER KING trademark and word mark. SB Designs has answered the complaint in that case, and discovery is scheduled to conclude April 4, 2004.

---

[3]Count I also asserts a claim under 15 U.S.C. § 1114.

On June 5, 2003, Judge Zagel denied SB Designs' motion to amend the complaint in Case No. 01 C 3936.[4] On August 13, 2003, plaintiffs (in the instant suit) served And 1 with the complaint in this action.

## DISCUSSION

And 1 advances two main arguments in support of its motion: (1) plaintiffs fail under Fed. R. Civ. P. 12(b)(6) to state a claim upon which relief can be granted; and (2) the portion of the complaint relating to And 1, Counts III and IV, should be severed under Fed. R. Civ. P. 21 because it is misjoined with those portions of the complaint relating to the other defendants. Because the court concludes that And 1 was misjoined, the court grants And 1's motion on that basis and need not reach the merits of And 1's Rule 12(b)(6) arguments. Moreover, for the reasons explained below, the court concludes that transfer of the severed claims to the Eastern District of Pennsylvania is appropriate under 28 U.S.C. § 1404(a).

Fed. R. Civ. P. 20(a), which governs permissive joinder, provides that multiple defendants may be joined in one action if "there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." The first amended complaint, however, alleges multiple acts of infringement committed by And 1 that do not involve the same transaction, occurrence, or series of transactions or occurrences as the alleged acts of infringement committed by the other defendants.

---

[4]The Nike suit was settled on February 12, 2004, and dismissed with prejudice on February 20, 2004.

The first amended complaint does not allege any relationship between the allegedly infringing acts of And 1 and any other defendant (aside from the allegations relating to Crossova Productions' promotion of And 1 products). To the contrary, it appears that And 1 operates independently of the other defendants and sells different products in competition with theirs. The fact that the defendants allegedly violated the same trademark does not mean that plaintiffs' claims against them arise out of the same transaction or occurrence. See, e.g., Androphy v. Smith & Nephew, Inc., 31 F. Supp. 2d 620, 623 (N.D.Ill. 1998) (defendants in patent infringement case who sold different products and were competitors of one another were improperly joined); Pergo, Inc. v. Alloc, Inc., 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) ("[T]he fact that two parties may manufacture or sell similar products, and that these sales or production may have infringed the identical patent owned by the plaintiffs is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a).").

Stanley Works v. Haeger Potteries, Inc., 35 F.R.D. 551 (N.D.Ill. 1964), cited by plaintiffs, does not compel a contrary result. The plaintiff in Stanley Works moved to join two additional defendants who allegedly actively induced the other defendants' patent infringement by "agreeing to indemnify and defend the non-licensed defendants presently before the court in any patent suit brought against them." Id. at 553. In permitting joinder, Judge Marovitz stated, "It would seem that where the party to be added allegedly made possible [the other defendants'] infringement, induced it, and contributed thereto, judicial economy would require that party's presence in the original infringement suit." Id. at 554. No such relationship has been alleged in the instant case, and thus Stanley Works is distinguishable.

7

Plaintiffs maintain that a common issue of damages exists because they are advancing a theory of "collective infringement." That is insufficient under Rule 20, which requires not only common questions of law or fact, but also the same transaction or occurrence or series thereof. Plaintiffs have failed to demonstrate to the court how And 1's alleged acts of infringement are in any way related to the alleged acts of infringement committed by Reebok, Crossover Promotions, Crossover Sportsgear, or Crossover City Hoops, which involved entirely different products, identifying marks, and sales venues. And 1's motion to sever is therefore granted.

The court further concludes that plaintiffs' claims against And 1 should be transferred pursuant to 28 U.S.C. § 1404(a) to the Eastern District of Pennsylvania where And 1's declaratory judgment action is currently pending. See Hess v. Gray, 85 F.R.D. 15, 22 (N.D.Ill. 1979) ("If certain claims are properly severed, the result is that there are two or more separate actions, any of which may be transferred while retaining jurisdiction over the others.") (citing Wyndham Associates v. Bintliff, 398 F.2d 614 (2d Cir. 1968)).

Section 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." According to the Seventh Circuit, "the 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir. 1986). "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system," such as likelihood of a speedy trial and feasibility of consolidation. Id. at 221.

It does not appear that SB Designs has contested the convenience of the Eastern District of Pennsylvania as a forum in that case or sought transfer of that case to this district. More importantly, it appears that a transfer to the Eastern District of Pennsylvania is in the interest of justice. Discovery in the Eastern District of Pennsylvania action is scheduled to conclude on April 1, 2004, and the case will be placed on that court's trial list on August 2, 2004. Thus, that action has progressed much farther than the instant case, which is still at the pleading stage. Further, according to the Federal Court Management Statistics for the year ending September 30, 2003, the median time from filing to trial for civil cases in the Eastern District of Pennsylvania is 19.0 months, compared with 26.0 months in the Northern District of Illinois. See http://www.uscourts.gov/cgi-bin/cmsd2003.pl. Thus, the court concludes that a § 1404(a) transfer will serve the interest of justice, in particular the efficient administration of the court system, as well as the convenience of parties and witnesses.

## CONCLUSION

For the reasons stated herein, And 1's motion to sever is granted, and Counts III and IV are transferred sua sponte to the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a). Reebok's motion to dismiss is denied as moot. At the status report on March 2, 2004, at 9:00 a.m., plaintiffs are directed to inform the court why the remaining defendants should not be dismissed either under Fed. R. Civ. P. 4 or for the reasons set forth in this opinion.

**ENTER:** **March 1, 2004**

Robert W. Gettleman
United States District Judge