IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

FILED
AUG 6 2004
Judge Robert W. Gettleman
United States District Court

DOCKETED
AUG 1 0 2004

| | |
|---|---|
| SB DESIGNS, GARY SIDNEY and MAURICE SIDNEY, ) ) ) | |
| Plaintiffs, ) | No. 03 C 3672 |
| ) | |
| v. ) | |
| ) | Judge Gettleman |
| REEBOK INTERNATIONAL, LTD., and CROSSOVA PRODUCTIONS, ) ) ) | Magistrate Judge Keys |
| Defendants. ) | JURY DEMAND |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT REEBOK'S MOTION FOR SUMMARY JUDGMENT

*Introduction*

Reebok's motion for summary judgment is not only premature; it is meritless. Originally incorrectly labeled as a Rule 12(b)(6) motion, on June 10, 2004, the Court converted the motion to a motion for summary judgment, and excused the parties from the requirements of Local Rule 56.1. (DE 46.) On that date the Court gave the Plaintiffs just over one month to conduct discovery and file a response brief. The Court later granted Plaintiffs a 17 day extension to file their response after Reebok requested that affiant John Lynch's deposition be rescheduled until July 19, 2004. (DE 52.) Despite the fact that no discovery cutoff date has yet been set and only minimal discovery has occurred, Reebok now claims it is entitled to summary judgment. It backs this claim with only two documents containing admissible evidence that can be considered in support of a motion for summary judgment: Lynch's self-serving affidavit, and four paragraphs of the otherwise completely redacted 29 page

1

53

agreement between Reebok and Allen Iverson. Although Plaintiffs require– and are obviously entitled to– further discovery to build their case, for the time being more than sufficient facts have been uncovered justifying denial of Reebok's motion. Reebok is liable for Iverson and Crossover Promotions' trademark infringement under a theory of contributory liability, since Reebok has allowed its mark to be affixed to goods also bearing Crossover Promotions' infringing mark. As to the other issues raised in Reebok's motion, Plaintiffs need the opportunity to engage in further discovery before they can determine whether Reebok is vicariously liable for Iverson and Crossover Promotions' infringement, and whether Reebok has sponsored third party websites. Reebok's motion for summary judgment should thus be denied.

### *Statement of Facts*

SB Designs is owned and operated by brothers Maurice, Gary, and Christian Sidney, and is devoted to the creation and design of sports logos and concepts for basketball attire. (Exhibit 3 to Exhibit A, Affidavit of Christian Sidney, attached.) SB Designs owns the Crossover King trademark, a logo portraying an athlete executing the "crossover" basketball move. (*Id.*; *see also* screen shot of Crossover King mark, attached as Exhibit B.) In June 1997, SB Designs President Christian Sidney began to send correspondence to Reebok, pitching the idea of Reebok marketing Reebok endorsee Allen Iverson as the "Crossover King" in conjunction with the Crossover King mark. (Exhibit A at ¶¶ 3-6, Exhibits 3, 5, 6, 9 &11.) Christian later sent promotional art pieces to Reebok Brand Manager of Iverson Apparel Henry Que Gaskins, Reebok Brand Director of Basketball Peter Roby, and Paul Fireman. (*Id.* at ¶ 9.) Eventually, Gaskins contacted Christian Sidney on March 17, 1998. (*Id.* at ¶ 12.) In their phone conversation, Gaskins stated the Crossover King concept "had potential," and that

Gaskins had interest in licensing Crossover King for a summer apparel line for Iverson. (*Id.*) Christian Sidney followed up with Gaskins in a March 24, 1998 letter, and supplied another promotional art piece bearing the Crossover King mark. (*Id.* at ¶ 13.) Christian also mailed Crossover King promotional pieces to Kate Urekew and Kathy O'Connell at Reebok, as Gaskins had instructed. (*Id.*) In response, SB Designs received a letter dated April 6, 1998 from Reebok declining interest in the Crossover King mark. (*Id.* at ¶ 14.)

After failing to reach Gaskins for several months, in September 1998 Christian Sidney spoke once again with Gaskins. (*Id.* at ¶¶ 15-16.) Gaskins informed Christian that any interest at Reebok in Crossover King would be postponed until Reebok's new CEO gave the word. (*Id.* at ¶ 16.) Christian followed up by making further contact with Reebok's Idea Submissions Coordinator Kathleen Joyce. (*Id.* at ¶ 18.) Months passed. Finally, in early 1999, SB Designs contacted Gaskins by phone and asked for a final answer concerning Reebok's interest in Crossover King. (*Id.* at ¶ 19.) Gaskins indicated that Reebok was probably going to move forward with the I3 concept, and indicated SB Designs might want to contact Adidas as a possible partner. (*Id.*) After this conversation in early 1999, SB Designs broke off all contact with Reebok, opting to market Crossover King products on their own. (*Id.*)

Shortly thereafter, in March 1999 SB Designs discovered various internet sites that were promoting Allen Iverson as the "crossover king." (*Id.* at ¶ 21.) One of these websites is operated by Crossover Promotions, a website that promotes itself as "Allen Iverson's Official Fan Club." (*See* Exhibit C, screen shot of www.crossover-promotions.com/Default.aspx, last visited 8/3/04.) The site is apparently operated by Gary Moore, a friend of Allen Iverson. (Lynch Dep. Tr. at 48-49, attached as

3

Exhibit D.) The Crossover Promotions logo that greets visitors to the site is unmistakably similar to Crossover King's mark: it represents a basketball player leaning into the crossover basketball move, placed within a similar background suggesting the player is bursting from the screen, with the words "Crossover Promotions" set to the right of the logo. (*Cf.* Crossover King mark, Exhibit B, and Crossover Promotions mark, Exhibit C.)

In his deposition three weeks ago, Reebok Vice President of Sports Marketing John Lynch confirmed Reebok has a close relationship with Iverson's Crossover Promotions site. Lynch testified that Reebok authorized Crossover Promotions to sell Reebok's shoes and apparel over Crossover Promotions' website. (Exhibit D at 47.) Sometimes the merchandise was provided without cost, while on other occasions Crossover Promotions paid for the merchandise. (*Id.* at 48.) Lynch also testified that Reebok has sponsored and provided apparel for the Celebrity Summer Classic event, an event organized by Crossover Promotions. (*Id.* at 49-50; *see also* screen shot of www.crossover-promotions.com/allen_iverson_summer_classic.aspx, last visited on 8/3/04, attached as Exhibit E.) To this day, Crossover Promotions' online store is advertising t-shirts bearing both Crossover Promotions' and Reebok's marks on the same T-shirts. (*See* screen shot of www.crossover-promotionsn.geomerchant7.com/index.cgi? etc., last visited on 8/2/04, attached as Exhibit F.) Indeed, Reebok's and Crossover Promotions' relationship is so close that neither party has committed their agreements to writing. (Exhibit D at 49.)

*Argument*

Plaintiffs' case against Reebok can be boiled down to one central allegation: that Reebok has acted in concert with its athlete Allen Iverson's organization Crossover Promotions in marketing Iverson as the Crossover King, participated in marketing products bearing Crossover Promotions' infringing mark, and acted in concert with third party websites that promoted Iverson as the "Crossover King." Crossover Promotions' mark is strikingly similar to Plaintiffs' Crossover King mark, as a comparison of the attached logos reveals. (*See* Exhibits B & C, attached.) In support of its motion, Reebok claims that it cannot be liable for Crossover Promotions' infringement unless Plaintiffs can demonstrate vicarious liability. Indeed, in its brief Reebok goes so far as to state that under *Hard Rock Café v. Concession Services, Inc.*[1] "Reebok must be vicariously liable for the underlying acts by such third parties. . . . " if it is to be held liable for Crossover Promotions' infringement. (Reebok Memo. at 6.) This is a misrepresentation. In *Hard Rock Café* the Seventh Circuit discussed whether a flea market could be held liable for a vendor's sale of counterfeit T-shirts that allegedly infringed Hard Rock Café's trademark.[2] However, *Hard Rock Café* made it abundantly clear that the court was presented with two distinct issues: whether the record supported a finding of *either* vicarious liability *or* contributory liability.[3] Reebok's motion fails entirely to address whether it can be subjected to contributory liability, and thus waives argument on this issue. This lapse is fatal to its motion, and on this basis alone Reebok's motion for summary judgment should be denied. And even if one were to ignore

---

[1] 955 F.2d 1143 (7th Cir. 1992).

[2] *See id.* at 1145.

[3] *See id.* at 1148.

5

this fatal flaw, it is clear even at this early stage of discovery that ample evidence exists creating a genuine issue regarding whether Reebok is contributorially liable for Crossover Promotions' infringement. Moreover, once Plaintiffs (or in the alternative, the Court *in camera*) are allowed to review Iverson's agreement with Reebok they can better determine whether Reebok is vicariously liable for Iverson and Crossover Promotions' infringement.

1. **The factual record supports the inference that Reebok is contributorially at fault for Crossover Promotions' infringement of Plaintiffs' marks.**

As the Seventh Circuit stated in *Hard Rock Café*,

> It is well established that "if a manufacturer intentionally induces another to infringe a trademark, *or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement*, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit."[4]

Willful blindness is equivalent to actual knowledge of infringement.[5] Examining the facts of the case in *Hard Rock Café*, the Seventh Circuit found that since the flea market's owner saw that the infringing shirts had cut labels and were selling at a cut-rate price, and admitted that he never asked vendors whether they were selling counterfeit goods because he assumed they would lie, the evidence could support a finding of contributory liability.[6]

There is already ample evidence supporting the inference that Reebok knew or had reason to know that Crossover Promotions was engaging in infringement of Plaintiffs' marks, even as Reebok

---

[4]*Id.* at 1148, *quoting Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982) *(emphasis supplied)*.

[5]*See id.* at 1149.

[6]*See id.*

6

was supplying products to Crossover Promotions and allowing Crossover Promotions to manufacture products bearing Crossover Promotions' and Reebok's marks in conjunction. In his deposition, Reebok Vice President of Sports Marketing John Lynch confirmed Crossover Promotions and Reebok have had a close relationship. Lynch testified that Reebok authorized Crossover Promotions to sell Reebok's shoes and apparel over Crossover Promotions' website. (Exhibit D at 47.) Some of the merchandise was provided for free; on other occasions Crossover Promotions paid for the merchandise. (*Id.* at 48.) Lynch also confirmed that Reebok has sponsored and provided apparel for the Celebrity Summer Classic event, an event organized by Crossover Promotions. (*Id.* at 49-50; Exhibit E.) To this day, Crossover Promotions' online store is advertising t-shirts bearing both Crossover Promotions' and Reebok's marks on the same T-shirts. (Exhibit F.)

Nor is there any doubt that Reebok knew or should have known that Crossover Promotions' mark was confusingly similar to Plaintiffs' Crossover King marks. As early as 1997, and as late as 1999, SB Designs was in regular contact with high-ranking Reebok employees, proposing that Reebok use the Crossover King mark to market Reebok's Iverson as the "Crossover King." (Exhibit A at ¶¶ 3-19.) SB Designs President Christian Sidney spoke on several occasions with Que Gaskins, a Reebok employee who Lynch confirmed has "[a]t certain times" been the "main contact" for Allen Iverson. (*Id.* at ¶¶ 7-8, 12-13, 15-16; Exhibit D at 14.) The numerous letters that Christian Sidney mailed to Reebok were all affixed with the Crossover King mark, which was clearly identified as a trademark with the acronym "TM." (Exhibits 3, 5 & 11 to Exhibit A.) Christian Sidney also mailed Reebok promotional art pieces bearing the Crossover King mark. (Exhibit A at ¶ 9.) And while Lynch claimed he was unaware whether Reebok authorized Crossover Promotions to use Reebok's logo on

7

the site (Exhibit D at 37-38), one could reasonably infer that if Reebok had any objection to the use of its mark on the Crossover Promotions' products or website, Iverson and Crossover Promotions would have heard about it. Since Reebok was well aware of Plaintiffs' mark, and must have been aware of Crossover Promotions' mark's similarity with Plaintiffs' mark, it is clear that Reebok must have or should have known that it was supplying its products to an infringer, and allowing its mark to be affixed to goods in conjunction with an infringing mark. For this reason a material issue of fact exists as to whether Reebok is contributorially liable for Crossover Promotions' infringement of Plaintiffs' marks. The motion for summary judgment should therefore be denied.

2. **Discovery of the terms of the Iverson contract is necessary to determine whether Reebok can be held vicariously liable for Crossover Promotions' infringement of Plaintiffs' marks.**

Under *Hard Rock Café*, Reebok can be held vicariously liable if an apparent or actual partnership existed between Reebok and Crossover Promotions.[7] At this time Plaintiffs are unaware whether a partnership exists between Reebok and Iverson's Crossover Promotions organization because Reebok has refused to disclose the terms of Iverson's endorsement contract with Reebok. When asked about the terms of the agreement at his deposition, Reebok's counsel instructed Lynch not to obtain a copy of the agreement, even though the document was readily available in Lynch's office just down the hall. (Exhibit D at 54-55, 62.) Reebok also refused to agree to a protective order that would ensure the confidentiality of the agreement. (*Id.* at 51.) Plaintiffs did not formally request an unredacted copy of the agreement because Reebok attorney Brian Lum represented at a status

---

[7]*Hard Rock Café*, 955 F.2d 1143, 1150.

conference in open court that he could provide a copy to the Court for *in camera* inspection. If Reebok still intends to abide by Lum's representation, Plaintiffs are content to allow the Court to decide for itself after *in camera* review whether or not an actual agency was created by the agreement. In the event that Reebok reneges on its representation to the Court, Plaintiffs have submitted a Rule 56(f) affidavit attesting to the fact that without discovery of the Iverson contract Plaintiffs cannot present sufficient facts essential to justify Plaintiffs' opposition to summary judgment. (*See* Rule 56(f) Affidavit of Christopher V. Langone at ¶¶ 2-3, attached as Exhibit G.)

### 3. Plaintiffs require further discovery to determine whether Reebok has sponsored third party websites.

Lynch stated in his affidavit that Reebok has not sponsored, endorsed, nor is affiliated with the third party web sites described in the Second Amended Complaint that Plaintiffs assert have infringed their marks. (Lynch Affidavit at ¶¶ 7-8, attached to Exhibit D as Exhibit 1.) However, Lynch admitted in his deposition that he relied only on his memory and a conversation with a Todd Krinsky in making this allegation. (Exhibit D at 40-41.) He also admitted that he never spoke to anyone in Internet Marketing to confirm whether his belief was accurate. (*Id.* at 41.) Lynch is the Vice President of Sports Marketing. (*Id.* at 47.) He is not employed in internet marketing, and was never designated as a Rule 30(b)(6) representative competent to testify as to which third party websites Reebok has sponsored. Plaintiffs are entitled to engage in further discovery to determine if Lynch's "memory" is correct. Plaintiffs have thus attached a Rule 56(f) affidavit attesting to the fact that without further discovery of Reebok employees with knowledge of Reebok's efforts at promotion and sponsorship of third party websites, Plaintiffs cannot present sufficient facts essential to justify Plaintiffs' opposition to

9

summary judgment. (Exhibit G at ¶¶ 2, 4-5.)

## *Conclusion*

For the above reasons Defendant Reebok's motion for summary judgment should be denied.

Respectfully submitted,

SB Designs, Gary Sydney and Maurice Sydney, Plaintiffs

By: _____
One of the Plaintiffs' Attorneys

Christopher V. Langone
Craig R. Frisch
Jeffrey D. Naffziger
The Langone Law Firm
25 East Washington, Suite 1805
Chicago, IL 60602
312-782-2000

10

## CERTIFICATE OF SERVICE

I, Jeffrey D. Naffziger, an attorney, hereby certify that I caused a copy of the foregoing *Plaintiffs' Memorandum in Opposition to Defendant Reebok's Motion for Summary Judgment* to be served on:

Charles A. Laff
Brian Lum
Michael Best & Friedrich LLC
401 North Michigan, Suite 1900
Chicago, IL 60611
(312) 222-0818 *(facsimile)*

by facsimile, and by depositing the same in the United States mail at 25 East Washington, Suite 1805, Chicago, IL 60602 on August 6, 2004: