# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 3672 | DATE | Sept. 29, 2004 |
| CASE TITLE | SB Designs, et al v Reebok International, Ltd., et al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, defendant Reebok's motion for summary judgment is granted as to counts I and II. Plaintiffs are directed to appear for a report on status as to defendant Crossova Productions on 10/13/04, at 9:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | SEP 3 0 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | GMA | 58 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2004 SEP 29 PM 3:58 | | |
| GS | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**SEP 3 0 2004**

SB DESIGNS, GARY SIDNEY and MAURICE SIDNEY,

    Plaintiffs,

v.

REEBOK INTERNATIONAL, LTD., and CROSSOVA PRODUCTIONS,

    Defendants.

No. 03 C 3672

Judge Robert W. Gettleman

## MEMORANDUM OPINION AND ORDER

In their second amended complaint, SB Designs and its co-owners, Gary Sidney and Maurice Sidney, assert violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, against Reebok (Count I) and Crossova Productions[1] (Count III), and violations of the "Illinois Uniform Deceptive Trade Practices Act," 815 ILCS 510/1 et seq.[2], against Reebok (Count II), arising from defendants' alleged infringement of plaintiffs' trademark. Defendant Reebok moved separately to dismiss the instant complaint, and the court converted the motion to a motion for summary judgment. Because plaintiffs' state law claim arises out of the same facts that form the basis for their claim under the Lanham Act, the court's discussion herein focuses on the merits of plaintiffs' claim under the Lanham Act.

---

[1] As of the date of the instant ruling, only defendant Reebok has been served.

[2] Although plaintiff's introduction and Reebok's briefs refer to the "Illinois Unfair and Deceptive Trade Practices Act," 815 ILCS 505/1 et seq., plaintiffs' particularized allegation refers to the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq.

58

For the reasons discussed herein, the court grants Reebok's motion for summary judgment as to Counts I and II.

## FACTS

According to the second amended complaint, on December 19, 1994, Gary and Maurice Sidney applied for registration for the CROSSOVER KING trademark, which consists of the image of a basketball player in the action of a crossover dribble with a moving ball image and the trade name "CROSSOVER KING" underscoring the logo. On February 24, 1998, the CROSSOVER KING trademark was registered. On October 23, 2001, plaintiffs registered the CROSSOVER KING word mark, as well.

SB Designs allegedly markets basketball apparel affixed with the CROSSOVER KING trademark through the internet, magazine advertising, street marketing, trade shows and sponsorship of sports-related events. According to plaintiffs, beginning in June 1997, Christian Sidney, on behalf of SB Designs, pitched the CROSSOVER KING concept to Reebok. SB Designs hoped that Reebok would use the CROSSOVER KING concept in conjunction with professional basketball player Allen Iverson ("Iverson"), who has an endorsement agreement with Reebok. In response to his first letters to Henry Que Gaskins, Reebok's brand manager of Allen Iverson apparel, and Paul Fireman, then-chief executive officer and president of Reebok, Christian Sidney received a letter from Reebok's Idea Submissions Coordinator, Kim Lessow, indicating that Reebok could not consider SB Design's idea unless SB Designs signed Reebok's Idea Submissions Guidelines Form.

Although SB Designs did not sign the guidelines form, Maurice Sidney and/or Gary Sidney met with Reebok sale representative Alonzo Alexander on three occasions, and Diego Ross, Reebok's urban marketing manager, on one occasion. Further correspondence ensued, and on March 3, 1998, Christian Sidney, on behalf of SB Designs, allegedly sent CROSSOVER KING promotional art pieces to Gaskins, Fireman, and Peter Roby, Reebok's brand director of basketball. Roby declined interest and returned the art pieces, and Heather Snow, Reebok's legal manager of intellectual property, indicated that Reebok would not consider SB Designs' CROSSOVER KING concept, and returned the art pieces.

Gaskins, however, allegedly called Christian Sidney on March 17, 1998, indicating that he wanted to explore discussions about using the CROSSOVER KING concept in Reebok's (Allen) Iverson I3 Apparel line, and that there was also great potential for a related CROSSOVER QUEEN concept. On September 22, 1998, Gaskins informed Christian Sidney that they could not move forward until Reebok's new chief executive officer gave direction. On December 17, 1998, Christian Sidney contacted Reebok's new chief executive officer directly to pitch the CROSSOVER KING and CROSSOVER QUEEN concepts. Reebok's idea submissions coordinator responded that the Idea Submissions Guideline Form had to be signed before Reebok would consider SB Design's idea. Again, SB Designs did not sign the document.

In early 1999, Gaskins indicated that Reebok was planning to move forward with the Iverson I3 Apparel line concept (presumably without SB Designs), after which SB Designs broke off its contact with Reebok. Gaskins never returned the CROSSOVER KING and CROSSOVER QUEEN promotional art pieces that were sent by Christian Sidney.

Plaintiffs allege that in 1997 Reebok aired a television commercial on the BET television network showing Iverson performing a crossover dribble, "then the commercial flashed to a crown with the number 3 enclosed, indicating that Iverson was the 'Crossover King.'" Plaintiffs also allege that in 2002 they discovered two television commercials featuring Iverson and rapper Jada Kiss. According to plaintiffs, one of these commercials "indirectly insinuated that Allen Iverson was the Crossover King," and the other "insinuated that Allen Iverson was the Crossover King."

In March 1999, SB Designs allegedly discovered various internet sites that promoted Iverson, Reebok and the I3 Apparel line using the CROSSOVER KING trademark. In September 2000, SB Designs discovered the website of Crossover Promotions, Iverson's promotional company.[3] Plaintiffs allege that the website is sponsored by Reebok, and that Crossover Promotions is actively attempting to position and promote Iverson as the so-called "Crossover King." Plaintiffs also allege that numerous other third-party websites have promoted Iverson and sold Reebok merchandise in conjunction with the use of the phrase "Crossover King." For example, plaintiffs claim that in 2000 and early 2001 a website called the "Allen Iverson Chamber" featured Iverson and Reebok merchandise and used the phrase "Crossover King." They also claim that other websites contained material that infringed the CROSSOVER KING marks. In addition, Plaintiffs allege that Iverson retained Reebok to coordinate the marketing and promotion of Iverson's name, including use of the crossover concept. Moreover, according to the second amended complaint, the Crossover Promotions name and image is confusingly similar to the CROSSOVER KING trademark.

---

[3] www.crossover-promotions.com

Based on these allegations, plaintiffs seek damages and injunctive relief under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, against Reebok (Count I) and Crossova Productions (Count III), and under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq., against Reebok (Count II). Reebok originally filed the instant motion as a Rule 12(b)(6) motion to dismiss on April 23, 2004. The court converted it to a Rule 56 motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material

5

facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

## DISCUSSION

Reebok advances two main arguments in support of its motion: (1) plaintiffs fail to allege that Reebok itself used plaintiffs' putative trademarks; and (2) plaintiffs fail to produce evidence that Reebok is secondarily liable for the allegedly infringing actions of Crossover Promotions or the third-party websites.

## I. Lanham Act Claim (Count I)

### A. Reebok's alleged direct infringement

Trademark infringement may occur when one either uses or reproduces a registered mark in advertisement of goods or services that is likely to cause confusion. 15 U.S.C. § 1114(1)(a), (b). As Reebok points out, and the Lanham Act makes clear, liability attaches under sections 1114 and 1125 of the Lanham Act only when an unauthorized person or entity uses another's trademark, or reproduces, counterfeits, copies, or colorably imitates another's trademark. The second amended complaint alleges three instances of directly infringing conduct by Reebok: (1) the 1997 BET commercial; and (2) the two commercials featuring Iverson and Jada Kiss, which allegedly aired in 2002. Plaintiffs, however, do not allege that Reebok ever used or imitated the CROSSOVER KING marks in its commercials. Plaintiffs do not provide any evidence of

6

Reebok's use of plaintiffs' marks, and they do not dispute Reebok's argument in its motion that the alleged conduct does not constitute direct infringement by Reebok. The court therefore grants Reebok's motion for summary judgment with respect to the theory of direct infringement as set forth in Count I.

### B. Reebok's alleged secondary liability

The heart of the dispute between the parties centers on Reebok's alleged secondary liability for the alleged infringement by third-parties Crossover Promotions and various other websites. A party that does not directly infringe on another's mark may be found secondarily liable for the infringement, under either a contributory or vicarious theory of liability. Hard Rock Café Licensing Corp. v. Concession Services Inc., 955 F.2d 1143 (7th Cir. 1992). If the court finds there are genuine issues of material fact as to either theory, summary judgment is inappropriate. Reebok does not argue the alternative ground that there was no infringement by third parties. For the purposes of the pending motion only, the court will assume that Crossover Promotions and the third-party websites infringed plaintiffs' marks.[4] As set forth below, however, the court finds that the undisputed facts entitle Reebok to judgment regarding both theories with respect to both Crossover Promotions and the third party websites. The court, therefore, grants Reebok's motion for summary judgment with respect to secondary liability as set forth in Count I.

---

[4]The court notes that there may be serious questions as to the validity of plaintiffs' trademark and whether any underlying infringement occurred with respect to the logos. These issues, however, are not before the court in the present summary judgment proceedings.

**Vicarious liability**

The Seventh Circuit has recognized that a joint tortfeasor may bear vicarious liability for trademark infringement by another. David Berg & Co. v. Gatto Int'l Trading Co., 884 F.2d 306 (7th Cir. 1989). This theory of liability "requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." Hard Rock Café, 955 F.2d at 1150. Hard Rock Café held that a flea market owner could not be vicariously liable for infringing acts by vendors who rented space in the market, noting that the owner did not hire the vendors, take a portion of their sales, or exercise control over them beyond that exercised by a landlord. 955 F.2d at 1150. In the instant case, the issue is whether there is a genuine issue of material fact regarding the relationship between Reebok and Crossover Promotions and/or the third party websites.

Plaintiffs make multiple claims that there was a business relationship between Reebok and Crossover Promotions, Iverson's promotional company, and that Reebok "allowed, encouraged, and ratified" the actions of Iverson and Crossover Productions. Reebok argues that there is no evidence of an agency, partnership, or other relevant relationship between Reebok and Crossover Promotions, and therefore Reebok cannot be vicariously liable. The court agrees, for the reasons stated herein, that plaintiffs fail to raise a genuine issue of material fact as to the existence of a relationship between Crossover Promotions and Reebok that would expose Reebok to vicariously liability under the standard expressed in Hard Rock Café.

Reebok does not deny there it has a history of prior dealings with Crossover Promotions. Despite plaintiffs' claim, however, Lynch did not testify at his deposition that Crossover

8

Promotions and Reebok had a "close relationship." Rather, Lynch testified that at one time Reebok did allow Crossover Promotions to sell Reebok products over the Crossover Promotions website. It is undisputed that Reebok has sponsored Crossover Promotions' Celebrity Summer Classic softball and basketball games in past years. Lynch, however, denied in his affidavit and at his deposition that there is, or ever was, a business relationship or contract between the two entities, and plaintiffs presented no evidence to refute this claim. The mere existence of a relationship of some kind between Crossover Promotions, which is connected to Iverson, and Reebok, which has an endorsement deal with Iverson, does not render Reebok vicariously liable for the actions of Crossover Promotions.

The court notes that plaintiffs concede that they present no evidence of vicarious liability, but argue that they are entitled to further discovery on the issue of the precise nature of the relationship between Reebok and Crossover Promotions and/or Iverson. Plaintiffs speculate that the endorsement agreement between Reebok and Iverson (the "Agreement") may contain evidence of such a relationship with Crossover Promotions. Reebok attached a copy of the Agreement to its motion to dismiss that was heavily redacted but contained paragraph 13.13, a statement that the Agreement does not constitute a partnership, joint venture, or employer-employee relationship between Iverson and Reebok. Lynch testified in his affidavit that Crossover Promotions is not a party to the Agreement. Plaintiffs present no evidence in response.

Plaintiffs never made a formal discovery request or other motion to obtain an unredacted copy of the Agreement, but this is not the first time plaintiffs have raised the issue of the Agreement. Plaintiffs filed two Rule 56(f) affidavits reciting a need for an unredacted copy in

order to respond to Reebok's motion. The first was filed on June 7, 2004, in anticipation of the court's conversion of the motion to dismiss, and the second affidavit, which was similar to the first, was attached to plaintiffs' response to the instant motion filed on August 6, 2004. Plaintiffs also aired their desire for an unredacted copy in open court at a status conference hearing on June 10, 2004, and again during Lynch's deposition on July 19, 2004.

A party in need of additional discovery must bring the issue before the court in a timely and expeditious manner. Kalis v. Colgate-Palmolive Co., 231 F.3d 1049, 1058 (7th Cir. 2000). A plaintiff cannot continue to delay a summary judgment motion for lack of discovery after being granted time to pursue the purportedly necessary discovery. See Woods v. City of Chicago, 234 F.3d 979, 990-91 (2000).[5] Reebok filed its motion to dismiss on April 23, 2004, with a heavily redacted copy of the Agreement attached. It was then plaintiffs' prerogative whether to file any follow-up discovery requests, and they had the burden to do so in a timely fashion. After the first 56(f) affidavit was filed, and the motion was converted on June 10, 2004, Plaintiffs were given until July 16, 2004, to respond, and then granted two extensions, to August 6, 2004. Plaintiffs never brought the issue formally before the court.

Under Rule 56(f), a nonmoving party may submit an affidavit requesting a continuance if further discovery is needed to oppose a motion for summary judgment. Fed. R. Civ.P 56(f). The plain language and purpose of the rule dictate that such affidavits are to be filed <u>before</u> the response to summary judgment, not as an attachment to the response, at which point a continuance is moot. For these reasons, plaintiffs' second 56(f) affidavit is of no significance to

---

[5]The court notes that Reebok refers to unpublished Seventh Circuit opinions in its reply brief in support of summary judgment. Under Seventh Circuit Rule 53, unpublished opinions may not be cited or used in any federal court within the circuit.

their response to the summary judgment motion. Further, plaintiffs' speculation as to the contents of the Agreement is nugatory because an unredacted copy is not before the court by plaintiffs' own doing. While the court must accept any reasonable inference against the movant on summary judgment, it need not accord weight to pure speculation. Fed. R. Civ. P. 56(c); Stop-N-Go of Madison, Inc. v. Uno-Ven Co., 184 F.3d 672 (7th Cir. 1999). The court, therefore, will consider the record as it stands, which contains no triable issue of Reebok's vicarious liability for the acts of Crossover Promotions.

Reebok also argues that it is not vicariously liable for the allegedly infringing acts of several other third-party websites. Plaintiffs attach various screen shots and print-outs of several allegedly infringing websites, but these exhibits show no indication that the websites are owned by, endorsed by, or otherwise affiliated with Reebok. In general, the websites contain what appear to be comments and postings by basketball fans about Iverson and other players, and some of the websites offer Reebok shoes and apparel for sale. There is no evidence that Reebok supplied the products for sale on the websites, or permitted the sales or the use of Reebok's tradename or logos. Lynch stated in his affidavit that at no time has Reebok authorized, licensed, permitted, or encouraged the use of Reebok's trademarks, trade name, service marks, or trade dress on any of the websites cited by plaintiffs. Plaintiffs do not refute this claim, and thus create no triable issue as to whether there is a relationship between Reebok and these websites that would subject Reebok to vicarious liability.

For the reasons stated above, the court grants summary judgment with respect to the vicarious liability theory as set forth in Count I in connection with both Crossover Promotions and the third-party websites.

**Contributory liability**

Even if the court finds Reebok is not vicariously liable, plaintiffs argue, Reebok is still liable under the theory of contributory liability. Contributory liability for infringement attaches when the defendant either intentionally induces a third party to infringe the plaintiff's mark or supplies a product to a third party with actual or constructive knowledge that the product is being used to infringe the mark. Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 853-54 (1982); Hard Rock Café, 955 F.2d at 1150 (applying the Inwood Laboratories standard). Plaintiffs allege only the latter basis for contributory infringement liability and therefore must prove that Reebok supplied a product to third parties with actual or constructive knowledge that the product was being used to infringe the CROSSOVER KING marks. Inwood Laboratories, 456 U.S. at 854. The Seventh Circuit has clearly held that a supplier has no affirmative duty to seek out and prevent trademark violations, but has a duty only to understand what a reasonably prudent person would understand. Hard Rock Café, 955 F.2d at 1149. The court is thus left to consider two issues on plaintiffs' contributory infringement causes of action: (1) whether Reebok supplied a product to third parties that was used by third parties to infringe plaintiffs' marks; and (2) whether Reebok had actual or constructive knowledge of the infringement.[6]

Plaintiffs point to only one instance involving an actual product. It is a t-shirt advertising the 2001 Celebrity Summer Classic, allegedly for sale on the Crossover Promotions website, that features the "RBK" logo of one of Reebok's product lines on the sleeve, and a logo for the Celebrity Summer Classic on the front. Although plaintiffs allege that the Celebrity Summer

---

[6]As stated above, the court questions whether any of the alleged conduct constitutes infringement of plaintiffs' mark, but assumes for the purposes of this motion only that infringement did occur.

Classic logo infringes plaintiffs' mark, the logo bears little resemblance to the CROSSOVER KING mark, and is markedly different from Crossover Promotions' general logo.[7] Again, for the purposes of this motion only, the court will assume that the Celebrity Summer Classic logo infringes plaintiffs' mark. Assuming infringement, this t-shirt satisfies the requirement that the infringement involve a defendant-supplier's product, as evidenced by Reebok's mark on the shirt sleeve. Plaintiffs fail, however, to provide any evidence that the shirt was supplied to Crossover Promotions by Reebok, rather than purchased or received from another source.

Even assuming the t-shirt was supplied by Reebok, plaintiffs present no evidence that Reebok was "allowing Crossover Promotions to manufacturer products bearing Crossover Promotions' and Reebok's marks in conjunction," as plaintiffs claim. Further, plaintiffs offer no evidence regarding how and when the Celebrity Summer Classic logo was placed on the shirt. There is no evidence that Lynch or anyone at Reebok visited the Crossover Promotions website, or otherwise inspected Crossover Promotions' promotional material or merchandise. Plaintiffs therefore fail to identify a triable issue as to whether Reebok knew or should have known that the allegedly infringing mark would be affixed to the product, if it was indeed supplied by Reebok.

The bulk of allegedly infringing incidents cited by plaintiffs are not related to infringing products allegedly supplied by Reebok. Rather, plaintiffs' allegations are centered on the sale of Reebok shoes and apparel on the Crossover Promotions website, which displays Crossover

---

[7]The Celebrity Summer Classic logo depicts a solid black shadow figure of a basketball player dribbling a single ball, surrounded by a large basketball net and a sun graphic, against a solid colored background. In contrast, plaintiffs' mark is an outline of a basketball player performing a crossover dribble, as represented by multiple images of a basketball used to depict the ball's movement across the player's body, without any other graphic or background. Although the parties to the instant motion assume infringement for purposes of these summary judgment proceedings, such infringement with respect to the logos appears to be questionable.

Promotions' allegedly infringing mark, and Reebok's sponsorship of the Celebrity Summer Classic, which was advertised with Crossover Promotions' allegedly infringing mark. Plaintiffs point to an "Itinerary" for the 2004 Celebrity Summer Classic that was allegedly posted on the Crossover Promotions website. The "RBK" logo appears on the last page of the three page document along with the logos of six other sponsors, and "RBK" appears twice in the text as a sponsor. Reebok concedes that in addition to sponsoring the event, it provided shoes and apparel for the tournament, but plaintiffs do not present any evidence that these Reebok products, other than the t-shirt discussed above, were affixed with an allegedly infringing logo.

Plaintiffs appear to argue two bases for Reebok's contributory liability for Crossover Promotions' allegedly infringing actions. First, that a non-infringing supplier is contributorily liable if the product it supplies is associated in some way with an infringing product that the supplier did not supply. Second, that sponsors of an event who supply products for the event, without more, are contributorily liable for infringement committed by the event's promoters or organizers. To accept either argument requires a significant expansion of this theory of liability, which is unwarranted under the instant facts. Plaintiffs cite to Hard Rock Café as their only supporting authority without elaboration, but they are in fact arguing for a substantial expansion of the Seventh Circuit's contributory liability theory.

Hard Rock Café does extend the contributory liability doctrine of Inwood Laboratories beyond the manufacturer-distributor context. 955 F.2d at 1149. The expansion of the "product" requirement for contributory infringement, however, is more limited than plaintiffs suggest. The Seventh Circuit's expansion of contributory liability is premised on a defendant's direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark. Hard

Rock Café, 955 F.2d at 1149; see also Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 984 (9th Cir. 1999) (suggesting the contributory liability theory could be applied to the internet if there was evidence of monitoring and control). Reebok asserts that it exercises no control over any of Crossover Promotions' conduct or materials, as Lynch testified in his affidavit and his deposition. Plaintiffs dispute this assertion, but present no evidence in support of their claim. Therefore, an extension of the doctrine beyond "products" is not warranted in the instant case because there is no evidence from which a reasonable jury could infer that Reebok controlled or monitored the contents of the Crossover Promotions website or the promotional material related to the Celebrity Summer Classic.

Plaintiffs' argument that Reebok is contributorily liable for the content of other third-party websites is less developed than its arguments regarding Crossover Promotions' conduct, and therefore even less persuasive. Several of the websites cited by plaintiffs contain fan messages and postings that refer to Iverson and other basketball players as a "crossover king," or otherwise use the phrase "crossover king."[8] One of the websites also offers Reebok sneakers and apparel for sale.[9] Another displays the text "Allen Iverson - Crossover King" and images of a Reebok logo and an unidentified basketball player performing a crossover dribble.[10] Plaintiffs do not explain how these websites infringe their mark. More significantly, plaintiffs present no evidence that Reebok sponsored or was in any way associated with any of the websites attached

---

[8]The court notes that several of the webpages attached to the first amended complaint refer to original defendants who are no longer parties to the instant case. Plaintiffs do not attach new exhibits to the second amended complaint, but refer to the earlier exhibits.

[9]http://home.c21.net/espurkel/a1sneaks.htm; http://home.c21.net/espurkel/ivewear.htm

[10]http://www.geocities.com/Colosseum/Arena/7684

15

as exhibits. Plaintiffs also present no evidence that Reebok provided any products sold or displayed on any of the websites.

Plaintiffs argue that they need more discovery to determine whether Reebok has sponsored third-party websites. As with the Agreement, plaintiffs recited this need in both of their 56(f) affidavits, but did not take advantage of the ample time provided to take any relevant discovery. This is the same argument plaintiffs advanced regarding their lack of evidence of vicarious liability, and it fails again here for the reasons set forth above. The court, therefore, will consider the record as it stands, which contains no evidence from which a reasonably jury could find Reebok's contributory liability for the acts of third-party websites.

For the reasons stated above, the court grants Reebok's motion for summary judgment with respect to the contributory liability theory as set forth in Count I with respect both Crossover Promotions and the third-party websites.

## II. Illinois Uniform Deceptive Trade Practices Claim (Count II)

Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade Practices Act also form the basis for plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes. Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act. Gimix, Inc. v. JS & A Group, Inc., 699 F. 2d 901, 908 (7th Cir. 1983). Illinois courts look to federal case law and apply the same analysis to state infringement claims. Spex, Inc. v. Joy of Spex, Inc., 847 F. Supp 567, 579 (N.D. Ill 1994) (dismissing claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive

Business Practices Act). Because the court grants summary judgment for defendant Reebok with respect to all portions of Count I, the court also grants summary judgment as to Count II.

## CONCLUSION

For the reasons stated herein, Reebok's motion for summary judgment is granted as to Counts I and II. Plaintiffs are directed to appear for a report on status as to defendant Crossova Productions on October 13, 2004, at 9:00 a.m.

**ENTER:** **September 29, 2004**

_____
**Robert W. Gettleman**
**United States District Judge**